### MATTICE v. KNIATT.
### No. 4301.

District Court, E. D. Pennsylvania.
Oct. 31, 1930.

Leonard L. Kalish and Ruby R. Vale, both of Philadelphia, Pa., for plaintiff.

Howson & Howson, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge.

In this suit the plaintiff, Royal Mattice, charges the defendant, Stephen J. Kniatt, trading as the Universal Welding Company, with infringement of the Mattice reissue patent No. 16,599 of April 19, 1927, for an improvement in "method of repairing broken metallic structures." The original patent, upon which the reissue was granted is No. 1,-592,609 of July 13, 1926, for which application was filed September 12, 1924.

The method of the patent, so far as it relates to the case, is for the repair or strengthening of cracked or fractured cast iron bodies, such as an engine frame or pump spacer or base, so as to relieve the part of the cast-iron body where the crack or fracture has occurred from the strain or load, and to transfer the strain or load to a steel repair plate bridging the crack or break so that the steel repair plate will effectively carry all the stress, strain, or load theretofore carried by the cast-iron member across the point where the fracture occurred.

In the Mattice method, a series of steel studs are secured on both sides of the crack or break, anchored directly in the body of cast iron by the mechanical means of screw threads and projecting above the cast iron a suitable distance. A steel plate; having countersunk holes corresponding in alignment to each of the steel studs in the cast iron is then superposed upon the cast iron over the studs projecting into the holes, the steel plate bridging the crack or break. The space between each hole and its stud is then closed by electric welding so that the space surrounding the stud in the countersink is entirely filled with welding material, and the body of the stud projecting beyond the cast iron is welded substantially to the steel plates through a substantial proportion of its length. The effect of the cooling of the welding material is to draw down the steel plate to a tight fit upon the cast-iron body being repaired. The bridging of the crack by the steel plate transfers any strain in the cast-iron structure to the steel plate and the studs by which it is held in position.

The patent contains ten claims, of which we may select claim 1 as illustrative of the method and claim 9 as illustrative of a structure combining the structure to be repaired

with the structure of the plaintiff's device described in the specifications:

1. "The method of joining metal plates or the like which comprises forming countersunk perforations in one of said plates, mechanically securing studs to the other plate, said studs being aligned with the aforesaid perforations, superposing the perforated plate on the other plate with the studs of the latter extended into the perforations, and then welding the studs to the superposed plate to fill the countersinks whereby to form a welded head on each of said studs."

9. "A plate having a crack or break therein, projecting members mechanically secured in said plate on each side of said crack or break, and a second plate arranged adjacent said first named plate and welded to said projecting members and bridging said crack or break to transmit strains to which said first named plate is subjected from the projecting members on one side of the crack or break to the projecting members on the other side of the crack or break."

The only material manner in which claim 1 differs from claim 9 is that in claim 9 the metallic structure to be repaired and the bridging steel plate are both regarded as plates.

The specifications and claims show that the method of the patent comprises a series of steps where, as in the repair under consideration, the details of which will be described later, the method is applied to a crack and not to a break or severance of the subject of repair into two parts, as shown in other claims and in the drawings not pertinent to this case.

The steps of the process are as follows:

1. The crack is sealed if desired by removing metal adjacent to form a V and then the V is welded.

2. A plate of suitable shape for the repair is drilled with a plurality of openings or holes which are countersunk.

3. The plate is temporarily positioned against the surface to be repaired to serve as a template, and holes are drilled into the structure corresponding in alignment to the holes in the plate. The drilled holes are then threaded or tapped.

4. Studs are then threaded into the openings drilled into the structure.

5. The plate is superposed upon the structure with the studs extending into the countersunk perforations in the superposed plate.

6. A head is formed on each stud by welding the studs to the superposed plate. The welding is continued until the entire countersink is filled, whereby the head becomes an integral part of the plate and stud.

*Findings of Fact.*

1. The defendant was formerly in the employ of the plaintiff, and, having left the plaintiff's employ and gone into business for himself under the trade-name of Universal Welding Company, he, some time in 1927, performed a repair job in the Commonwealth Trust Building at Twelfth and Chestnut streets, Philadelphia, upon the spacer of the elevator pump.

2. There was a crack in the spacer next to the flange of the pump approximately seven inches long.

3. The structure to be repaired was of cast iron, somewhat cylindrical in form. The defendant prepared two plates which were fitted to correspond in shape to the surface of the structure to be repaired, one plate fitting to the structure on one side of the crack and the other to the other side.

4. Five holes were burned into and through each plate.

5. Corresponding holes were then drilled into the cast-iron pump frame member and screw threaded so as to receive bolts.

6. Each of the plates was then fastened down with five half-inch bolts screwed into the frame member.

7. The plates were welded to the pump frame structure and were joined over the crack by welding material through a quick welding process, whereby the cooling of the welding material drew the two plates more closely together and thus to some extent at least closed the crack.

8. The heads of the bolts, which extended outside of the plates, were chiseled off and welding material applied over the tops of the bolts and into whatever space there was between the body of the bolts and the surface of the hole formed in the plate.

9. There was no countersink in the perforations of the plates.

10. The welding over the heads of the bolts accomplished no result besides that of holding the bolts in place, and did not form a head to the bolts as in the countersinking and welding of the plaintiff's process.

*Discussion.*

There is a broad distinction in the art between the bridging of a crack in a cast-iron

structure by means of a plate, as in the plaintiff's patent, to which is transferred the strain upon the cracked member, and the drawing together, by means of welding material, of two plates secured on either side of the crack, as in the defendant's construction.

The plaintiff's patent must be construed in the light of its history in the Patent Office and of the prior art. The shrink fit of the plate over the structure to be repaired obtained by the use of welding material in the countersink into which a stud is extended is shown in the Mosler patent No. 1,201,608 and by welding a head upon a stud in the Pennington patent No. 1,346,054. The Gruber patent No. 1,332,394 shows a stud attached to a lower plate and thoroughly welded to the superposed perforated plate. In the British patent to Quasy-Arc No. 114,268, the following language is used: "Finally the nuts k are removed one by one and the annular spaces provided by the chamfered holes h are filled in with deposits of welding metal l, Fig. 6, which draws the plate f even more tightly against the plate a, as the heated studs d and the deposited metal cool."

The defendant's construction work was quite similar in method to that disclosed in the patent to Wilson and Hutton No. 1,340,-644, where claim 1 reads: "A reinforced welded joint comprising welding metal united to other metal by welding and projecting members on the one engaging the other to form a mechanical grip to reinforce the joint."

And claim 8 reads: "The method of joining metals by electric welding which consists in providing the edges of two metal parts with projecting studs, and filling the space between the metals and around the reinforcing studs with metal deposited by a welding arc."

In the light of the prior art and of the history of the plaintiff's patent in the Patent Office, where he was compelled to withdraw claims broader than those finally allowed, upon Mosler and Pennington, it is clear that he cannot construe his patent to cover the defendant's construction. It is not shown that the introduction of welding material over the bolt heads is done in the same way or effects the same result in drawing down the repaired structure to fit the job as claimed in the patent in suit. Moreover, the filling of the space between the defendant's two plates by welding, thus drawing the two plates together and closing the crack and transferring the strain to the two plates and the weld is no part of the process or method of the plaintiff's claims and specifications, where it is expressly set forth that the strain is transferred to the steel plate.

The plaintiff very ingenuously urges that under his patent, where it is necessary or desirable to draw up or close up a crack in a cast-iron structure, the steel plate of the Mattice method may be split in two, along the line of the crack, and the two parts of the plate separately secured on the two sides of the crack in the usual manner of the Mattice method, and then the slit gap between the two parts of the split steel plate welded together quickly so as to cause the crack to be drawn up by the shrinkage of the weld between the two parts of the plate. But this case is one in which, as clearly shown by the record, the art has been the subject of gradual development and the procuring of many patents to cover each step of advance and differentiation. As was said in Chicago & N. W. R. Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053: "In such cases, if one inventor precedes all the rest, and strikes out something which includes and underlies all that they produce, he acquires a monopoly, and subjects them to tribute. But if the advance towards the thing desired is gradual, and proceeds step by step, so that no one can claim the complete whole, then each is entitled only to the specific form of device which he produces, and every other inventor is entitled to his own specific form, so long as it differs from those of his competitors, and does not include theirs. These general principles are so obvious, that they need no argument or illustration to support them."

*Conclusions of Law.*

1. It is held that the plaintiff's patent is valid, but that, in view of the prior art and the gradual development thereof, it must be strictly construed subject to the limitations of the method disclosed.

2. The defendant's construction is held not to constitute an infringement of the plaintiff's patent.

The bill will be dismissed at the plaintiff's costs.